I understand everyone's here. I'm going to call out of order very briefly United States v. LaToulalas. How am I pronouncing that, Mr. Silver? Mr. Silver, would you approach, please? Your opponent has agreed to submit, and we've examined the briefs. If you wish to have oral argument, we'll allow you to do so when your case is called, but if you wish to submit, we're more than happy to have you do that now, not expressing any kind of view with regard to the merits of the case, but I know you've come a long way, and I'm told that it's still snowing in Albany, and so rather than delay your journey back, I'm giving you this opportunity now to express your desires. I'm prepared to rest on the briefs, Your Honor, if that's satisfactory to the Court. It is. The briefs on both sides are well done. The issues are fairly well presented, and Mr. Silver, as always, we're grateful for your willingness to come before the Court and be of service to us in the oral argument, so with that, we'll deem the matter submitted. Thank you, Your Honor. Thank you, Mr. Silver. Safe journey home. Dotson v. JRL Music, Inc. et al. Ms. Rosario. Good afternoon. Good afternoon. May it please the Court. My name is Lita Rosario, and I'm here with my client, Venus Dotson. This matter and this case is involving a claim for declaratory relief regarding ownership of copyright. The claim is against JRL Music, Gamby Music, J.R. Forza Music, the estate of Joseph Robinson, the estate of Rhonda Robinson, Universal Music Publishing, Broadcast Music, Inc., and Sugar Hill Music. Broadcast Music, Inc., as Your Honors may be aware, has agreed to resolve this matter with my client, so they are not here today. Basically, Your Honors, this case involves a request for declaratory relief on ownership of copyright, of the renewal term of copyright under Section 304 of the Copyright Act on behalf of my client. It should be distinguished from the Merchant v. Levy case because this is not a case where the alleged or putative owner of copyright was not credited on the copyrights, on the label copy or other places, on registrations with the performing rights societies or others. Indeed, my client was credited. The problem, however, was that the defendants credited my client's name improperly in a number of cases, often as Vernice Dobson or otherwise as Venus Dobson instead of Venus Dobson, and created two distinct accounts for her compositions at Broadcast Music, Inc., independent from an account that she created in 1974 when the songs were originally written. As a result of that, royalties were diverted from her, unbeknownst of her, because she was not aware of the existence of the other two accounts. At some point in time, and I believe 2009, she did become aware that there were some issues regarding her claims, and she approached BMI to have them resolve the matter. At that time, Joseph Robinson, on behalf of Gamby Music and also a representative of the other publishing companies here, confirmed to BMI and to my client that her name was improperly listed and BMI properly credited her, changed the spelling of her name, and eliminated the two erroneous accounts that were there existing for her. Sometime subsequent to that, she became aware that the JRL Music, Gamby Music, and others entered into an agreement with Universal Music Publishing in asserting that the copyrights that were hers belonged to them and that Universal was collecting with regard to that. In a dispute regarding their right to collect her royalties, for the very first time in March of 2015, Mr. Sankiu, on behalf of these defendants, made a representation that the works were actually works made for hire, which is why this case was ultimately filed for and the request for declaratory relief sought. Mr. Rosario, is it the case then that between 2010 and roughly 2015, your client did not receive any royalties for the composition? No, she received royalties, Your Honor, from BMI. She did receive payments from BMI. In fact, she received a check for them, but not being a music publisher, she wasn't necessarily aware of all of the different places that royalties were supposed to come from, but she did receive checks, and she thought that the matter had actually been resolved. And why did she wait until 2015 to commence this proceeding? Because it was at that point where she found out in, I guess, sometime in late 2012 or 2013 that the Universal Music Publishing was now claiming the rights and collecting royalties, and at that point when a conversation entered into to try to resolve that dispute, the JRL and Gamby Music representative for the first time stated that the works were works made for hire. So that's what brought on the lawsuit. At that time, Your Honor, there was a kind of a back and forth, but the lawsuit was instituted, and my client specifically sought relief, declaratory relief that she was the owner of both her writer's share, the music publishing share, and the administration rights with regard to the copyrights, which there is a dispute in this case really as to whether or not if there were some rights that pursuant to the statute of limitations somehow inured to the benefit of the Robinson defendants, as I'll call them, there's a great question as to what those rights were. Was it the publishing rights? Was it the administration rights? Was there a work made for hire? So it wasn't until that point in time that those issues became clear and ripe and that there was a reason for declaratory relief regarding ownership of the copyrights. In connection with these claims, Your Honors, my client also made state law claims for restitution. The fact that she won the BMI coalesced doesn't resolve the fact that she was aware of the fact that there were improper registrations, whether they're fraudulent or just negligent with regard to who that person was, that she became aware of that at least in 2009 and 2010, right, when she learned of what was on the copyright registrations? At that time, right, her name was properly called. Isn't that when a cause of action accrues as opposed to when someone says no? I would disagree, Your Honor, because that was resolved in terms of her name. It may have been resolved with regard to BMI, but it wasn't resolved as to others that may have existed, right? Well, I mean, Your Honor. Wasn't she aware of, I mean, a claim accrues not when someone says I won't pay you, but when you know that they should pay you. Because the not paying is not part of your claim. Your claim is that she was an author or a writer and that she was not listed appropriately, and therefore she was entitled to royalties and she didn't receive them. Right. That's when a claim accrues, not when someone says I'm not going to pay you. Otherwise, the claim would not accrue until there was a conflict about it. But the claim accrues when you have all the necessary facts from which you can raise a claim. Well, Your Honor, I think it goes to whether or not there's an express repudiation at that point in time. I don't think that's what the law is. The law doesn't require repudiation. It requires you to have the necessary facts from which you can bring your claim. But at that time when BMI made the corrections and when he acknowledged that her name was spelled incorrectly and that the two fraudulent accounts that were set up, there were fraudulent accounts that were set up, as alleged by my client in the complaint, to actually divert money so that she wouldn't be aware that she was entitled to money. Did she have some interaction with the Copyright Office in 2010? Well, that's the point in time when these things happen. At the Copyright Office, Your Honor, there may have been an incorrect spelling of her name, but clearly her name was indicated on it. At the Copyright Office, was there some kind of indication that BMI was the only party of which might be misinformed with regard to who had an interest in these songs? I'm not so sure that they were the only ones, but they were certainly the primary ones. Well, that doesn't answer it because unless there's somehow the identities of the other defendants were somehow hidden from your client, then she had the necessary facts from which she could raise claims against them, didn't she? Well, it wasn't until she was under the impression that the dispute was resolved once the situation was corrected. The fact that BMI did something doesn't lull her into something. The question is she should ask who else owes her money. And it is true that the identities of those people that might owe her money were not hidden from her. She doesn't assert that, does she? Well, she doesn't necessarily have knowledge of who those people may have been. But it wasn't hidden from her is what I asked you. Right, but she's not making any claims against those people. Her claims here are because there was an assertion that the works were created as a work made for hire. Okay. And that's a distinguishing factor, Your Honor. You have your rebuttal time. Do you want to use some of your rebuttal time or do you want to wait? No, I'll hold my rebuttal time, Your Honor. Okay. Thank you, Ms. Rosario. Mr. Sinque? Good afternoon, Your Honors. My name is James Sinque. I represent the Robinson Appellees. And I think the pivotal issue here is when did plaintiffs claim accrue? And I submit there are a number of different accrual points, all of which are beyond three years before the commencement of this litigation. I think the first accrual point is creation. And the Merchant v. Levy decision from this court said on the exact issue before that court was the appropriate time period in which those claiming to be co-authors of a work whose copyright is registered to another person may sue to establish their co-ownership rights, which is exactly the case here, a co-writer claiming she's a co-owner of a copyright. And that court held its creation. The creation was in 1974, so 40 years away and clearly time-barred. The second possible point of accrual is registration. The complaint alleges that the copyrights were registered by Gamby Music in 1974. That's public notice for more than 40 years, and this court has held on many occasions that you need predictability and certainty in the copyright area so anyone who wants to know who's claiming a copyright can see that. That registration has her last name, does not it? But not as an owner. She's merging. Okay, so what does it have? Gamby Music is the sole copyright owner. And then it has her name and identifies her as what? On some of the songs as a co-author. Okay, and so your view is that that's at a point in time. Now, setting aside whether she actually knew, but your view is that the standard is a reasonable, objective standard when someone knows and they're on notice by the filing. Correct. And you're saying that by that she should have known, had she looked, that she would know that she was not listed as an owner. Exactly. Okay, go ahead. The third accrual point, I believe, comes as a result of nonpayment of royalties. She alleges in her complaint that she's never received music publishing royalties, yet she alleges that she was aware of a number of public uses. She claims popular recording groups use these songs. She said New Kids on the Block in 1993, Faith Evans in 2005, Whale in 2009, and Full Force in 2005. So we have all these public uses of which she admits knowledge more than three years before the commencement of the action. That's another accrual point. And I think the final accrual point, which is the one Judge Hellerstein said, you really don't even have to try to see beyond this. As the Court noted, in 2010, the plaintiff alleges she conducted her own investigation of BMI records and Copyright Office records and then found out that she was clearly not an owner of the copyright. So she actually knew in 2010 that she wasn't an owner. So even if you ignore all the other points of accrual, this clearly is one, and it was more than three years before she started the lawsuit. So I submit that the claim for co-ownership is time-barred. The payments made by BMI are just public performance rights royalties, have nothing to do with ownership royalties. So she knew for more than three years before she brought the lawsuit that she wasn't an owner. And concomitantly, all the state law claims that are dependent on the co-ownership of copyright claims fall under Merchant and under this Court's holding in Quan against Schlein, that any claims dependent upon copyright ownership must fall if the copyright ownership claim falls. Do you take the view that the notice of appeal is untimely? Yes, I do, Your Honor, because the appellant moved for re-argument, and she said she's moving for re-argument under 54B. That's what she said. And under Federal Rule of Appellate Procedure 4A, 54B is not one of those that extend the time to appeal from. So I would submit that the appeal is untimely because— Did you move to dismiss the appeal? No, I didn't. Mr. Sink, the plaintiff has made allegations concerning the misspelling of her name and the incorrect social security. What bearing, if any, does that have on this issue? I submit none, Your Honor, because those would go to the so-called BMI public performance rider royalties that have nothing to do with ownership. Did you oppose the motion to re-argue? Yes. You did? You filed papers against it? Yeah, memo, yes. Because I didn't see any in the record. Are you certain of that? I'm 99% sure. It's not in the record we have, which was of concern to me. Your view is different? Yes, I'm almost positive. I did. If you wish, I could advise the court when I get back to the office. I think you could on notice to your opponent. Your opponent will have 24 hours to respond. How would I do that, Your Honor, just by letter? Well, you just send a letter to us with a copy to your opponent and to the other side, the same side of your bench, and we'll give your opponent 24 hours to respond. Should I submit a copy? If it's not in the record, I'll submit a copy of it? Well, I didn't see it. If it's in the district court docket, I confess, I did not look in the district court docket. I just didn't see it in our record, that's all. Well, my co-counsel is arguing I'll look in the docket. Very good. Thank you. Thank you, Your Honor. I'll let your co-counsel inform me after you pass him a note if you found it someplace. Thank you, Your Honor. Andrew Bartt on behalf of Universal Music Publishing. I just want to make a couple of quick notes. First off, I think that there's been a lot of confusion in the plaintiff's submission about what rights are involved here. We're talking about copyrights, and the copyright certificates unambiguously, as the plaintiff admitted she found out, identify only one copyright owner. So the fact that there is a listing of other authors and the spelling, as Judge Marrero asked about, the spelling of some of the names on the other authors doesn't affect the critical issue, which is who is the copyright owner. That has been always in the name of Gamby Music. And even after the plaintiff discovered that fact, she did nothing to bring a claim saying that that claim of ownership had been erroneous from the beginning, and that alone is dispositive. And trying to circumvent all of that, the plaintiff deals a lot with issues of BMI payments. And BMI payments, as this Court is aware, is a completely different issue from the issue of copyright. As an author, there is a certain share of public performance money that is available to you directly through a performing rights society, whether or not you're a copyright owner or not. And so trying to clarify whether Ms. Dodson gets the righter share of monies from BMI is a completely separate consideration from whether or not there is a dispute as to copyright ownership, which there never was here. Your view is that the copyright filing date, which is what, 74? 74, yeah. Then is the public notice knowable? Yeah. I actually had the good fortune of arguing a case called Mahan v. Universal last year, which dealt with these same issues of the three-year statute of limitation applicable to copyright ownership claims and cited back to the Gary Friedrich decision and a whole slew of decisions. And this Court has a very flexible standard for when a copyright claim accrues, but the constructive notice from the public filing is certainly one of those elements which is sufficient. And in a case like this where the plaintiff has already admitted that no later than 2010 she saw those copyright filings, I think that's the end of the story. And I don't think that there needs to be any further discussion of what the spellings were or what happened with BMI or anything else. The plaintiff knew she should have known back in the 70s. She actually, in fact, did know in 2010. And so I think Judge Hellerstein was clearly correct. Thank you, Your Honor. Mr. Sinkia, did you find it? Hang on just for a second, Ms. Rosario. Docket entry 65. Docket entry 65? Yes. But it's not in our record, right? No, it's not. Should I submit a copy, Your Honor? No. Yes, I think you should, and I'll submit it by close of business today, and then I'll give you, Ms. Rosario, until tomorrow afternoon to comment on it. Thank you. Fair enough? Is that fair enough? All right. Your Honor, I think it's very important here to distinguish this case because we have a case that's involving renewal rights. And while there may have been a claim that accrued upon the filing of the copyright registration, which I would submit, Your Honors, when you file copyright registrations, there's a place to list claimant, but there's no requirement that all the copyright claimants be listed on that portion of the form. And, indeed, when a copyright claimant typically files that, they only file on behalf of themselves, and it is not dispositive of who owns the rights, vis-a-vis the writers that are listed on the copyright registration. Secondly, But it does tell the world who's making the claim. Yeah, but it doesn't. The purpose of it is so that ultimately the world can rely on that. Yes, Your Honor, but it doesn't. The copyright registration form does not explicitly state whether or not that relates to all of the authors. I would agree with you that it doesn't determine precisely who might own the copyright, and there might be a dispute arises from that, but it certainly puts the world on notice as to who's laying a claim to it. Right, and so that's valid for the original term of copyright, Your Honor, but now we're in the renewal term, which commenced in 2002, and the law is very clear that without a written agreement transferring a right in that renewal term, it doesn't automatically inure to the benefit of whoever claimed ownership on the copyright registration, which is why the renewal term issues are very significant in this case and distinguish it and is why Gary Freundrich is the case that is really relevant here. In that case, it was held that just because the payment of publisher royalties was not made to the renewal owner during that time period, it was not dispositive as to whether or not the statute of limitation should apply or that there was an express repudiation of copyright. Significantly in this case, Your Honors, the derivative works, and this is very significant regarding whether who owned the copyright ownership. In 1993, Gamby Music listed my client as one of the authors of the derivative works, did that again repeatedly all the way up until 2010. Those facts are inconsistent with the claim by Gamby Music that they owned her rights, particularly as a work made for hire, which is— Mr. Rosario, just one question on the question of renewal rights you've raised. Yes. Where in the complaint do you plead renewal rights? I don't expressly plead it, Your Honor. However, there is no other right that we could be talking about with regard to copyrights that were created. You say not expressly. Well, I— You plead implicitly. Well, I said I was asking for a declaration of ownership of copyright. So my position, Your Honors, would be that I didn't have to explicitly state regarding the renewal term. The copyrights are indeed, in fact, in the renewal term, so there's no decision that could be made other than with respect to the renewal term at this point in time. So once the renewal term kicked in and there's no written agreement, my client's rights vested in 2002 regarding her renewal term copyrights. The law is clear on that. So for—so this didn't—so the question of where we are today and the facts that happened in 2010 to 2015 are become what's significant and not what the copyright registration said in 1974. Okay. Your Honor. And the derivative works are very important in terms of the factual analysis. Also, plaintiff in this action filed an affidavit under Rule 56D requesting discovery in order to get to the bottom of the facts to determine whether or not there was a statute of limitations claim in this case. And, Your Honor, we would—Your Honors, we would state that that is very significant in terms of being able to actually determine factually if the statute of limitations is applicable, and we were not allowed the opportunity to do that at the district court level. All right. Fair enough. The matter is deemed submitted. You'll hear from us in due course. Thank you very much, both of you, or all three of you. And you've got to close the business tomorrow, Ms. Rosario, to respond as to what the nature of the objection was with regard to your motion. Thank you. Thank you.